IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TERI LYNN NEWTON,

    Plaintiff,

v.                                                            No. 1:16-cv-01130 SCY

NANCY A. BERRYHILL,
*Acting Commissioner of the*
*Social Security Administration*,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REMAND**

**THIS MATTER** is before the Court on Plaintiff Teri Lynn Newton's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. Doc. 23. The Court concludes that the ALJ erred in his consideration of the medical source opinion of Plaintiff's treating physician Dr. Douglas David, M.D. Therefore, the Court will **grant** Plaintiff's motion and remand this action for further proceedings consistent with this opinion.

**I.    BACKGROUND**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on September 28, 2012 and a Title XVI application for supplemental security income on September 26, 2012. Administrative Record ("AR") 21. She alleged a disability onset date of August 21, 2012. *Id*. After her claim was denied on initial review and upon reconsideration, her case was set for a hearing in front of an ALJ on July 17, 2014. *Id*.

On February 27, 2015, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. AR 21-32. In arriving at his decision, the

ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 21, 2012, her alleged onset date. AR 23. The ALJ then found that Plaintiff suffered from the following severe impairments: (1) osteoarthritis, (2) degenerative disc disease of the cervical and lumbar spine, (3) degenerative joint disease of the thumbs, (4) degenerative joint disease of the knees, status post left knee replacement, (5) bilateral carpal tunnel syndrome, and (6) bilateral valgus deformities. AR 23. The ALJ determined that Plaintiff's remaining impairments were non-severe. AR 24-25. Further, with regard to the severe impairments, the ALJ found that these impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 25.

Because he found that Plaintiff's impairments did not meet a Listing, the ALJ then went on to assess Plaintiff's residual functional capacity ("RFC"). AR 25-30. The ALJ stated that

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with some additional limitations. More specifically, she is able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for a total of about two hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday. She can occasionally balance, stoop, crouch, and climb ramps and stairs; she can frequently handle and finger bilaterally; and she cannot kneel, crawl, or climb ladders, ropes, or scaffolds. She is limited to work that can be performed on even terrain and nonslippery surfaces, and she can tolerate no more than occasional exposure to vibration, wetness, humidity, or extreme heat or cold.

AR 25-26. The ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 30. Based on the testimony of a vocational expert, the ALJ then determined at step five that considering Plaintiff's age, education, work experience, and her RFC, there are jobs that exist in significant numbers in the national economy that she can perform. AR 31.

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council. AR 1. The Appeals Council ultimately denied Plaintiff's request for review. AR 1. This appeal followed.

Doc. 23. Because the parties are familiar with the record in this case, the Court will reserve discussion of Plaintiff's relevant medical history, namely Dr. David's February 2014 assessment and the vocational expert's testimony at issue for its analysis.

## II.     APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits or supplemental security income if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual

functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Furthermore, even if a court agrees with a decision to deny benefits, if the ALJ's reasons

for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III. ANALYSIS

Plaintiff raises two arguments in this case. First, she argues that the ALJ erred in his consideration of the medical source opinion of her treating primary care physician, Dr. David, in violation of SSR 96-2p. *See* Doc. 23 at 11-19. Second, Plaintiff contends that the ALJ's Step 5 finding is not supported by substantial evidence because the vocational expert's testimony regarding the number of jobs in the national economy is not reliable. *See* Doc. 23 at 18-23. Because I find that Plaintiff's first argument regarding the ALJ's consideration of Dr. David's opinion is dispositive, I do not reach her second argument.

"When analyzing a treating physician's opinion, an ALJ first considers 'whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record.'" *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (quoting *Pisciotta v. Astrue,* 500 F.3d 1074, 1077 (10th Cir.2007)). "If so, the ALJ must give the opinion controlling weight. But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the

opinion should be rejected altogether or assigned some lesser weight." *Allman*, 813 F.3d at 1331 (internal quotation marks and citation omitted). The factors the ALJ may consider are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1331-32 (quoting *Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir. 2003)). "Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion. . . ." *Id*. at 1332 (internal citation omitted). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Id.* "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* (brackets omitted).

In this case, Plaintiff contends that the ALJ erred in his consideration of Plaintiff's primary care provider Dr. David's treating medical source statement. The statement at issue is a Medical Assessment of Ability to Do Work-Related Activities (Physical) questionnaire that Dr. David completed on February 20, 2014. AR 471. Therein, Dr. David assessed a number of physical exertional limitations on Plaintiff's ability to do work-related activities. Specifically, he found that Plaintiff could sit, stand, or walk for one hour at a time each and that over the course of an eight-hour workday, she could not sit, stand, and walk for more than a combined total of three hours. *Id*. He assessed that Plaintiff was able lift up to ten pounds and carry up to twenty pounds. *Id*. He also found that Plaintiff was unable to do simple grasping, pushing and pulling of arm controls, or fine manipulation with either hand; that she could push and pull ten pounds occasionally with either hand; and that she could not use either foot for repetitive movements.

AR 472. Dr. David further found that Plaintiff could never squat, kneel, crouch, or climb ladders and that she needed to be totally restricted from unprotected heights, exposure to moving machinery, chemicals, marked changes in temperature, noise, vibration and humidity. AR 473. Lastly, Dr. David opined that he could not see Plaintiff being able to work even part-time. *Id*.

In his ruling, the ALJ recognized Dr. David as a treating medical source and summarized Dr. David's February 2014 opinion. AR 29. Ultimately, however, the ALJ assigned "little weight" to the opinion, finding that "such extreme limitations are not supported by the record." *Id*. In addition to this general statement, the ALJ specifically pointed to the following evidence in the record: (1) x-rays of Plaintiff's spine from earlier that month "that showed only moderate lumbar degeneration"; (2) notes from Plaintiff's neurosurgical consultation two months later "that show that she demonstrated normal motor strength and was able to walk on her heels and toes"; and (3) Plaintiff's testimony at the hearing in which she stated that "she was able to sit for two hours of an eight-hour workday". *Id*.

Starting with the ALJ's general statement that Dr. David's extreme limitations are not supported by the record, the Court notes that specific, not general reasons such as this, must be given to justify discounting the opinions of a treating physician (particularly in cases such as the one now before the Court where the doctor's treatment of a patient spans almost thirteen years). The salient question then is whether the specific pieces of evidence the ALJ cited "make any meaningful connections" with the "specific limitation[s] assessed by Dr. David." Doc. 23 at 12. In answer, the Court finds that the specific pieces of evidence the ALJ cited fail to adequately address the limitations Dr. David placed (1) on Plaintiff's ability to sit and (2) on her ability to use her hands for repetitive actions.

7

Dr. David opined that Plaintiff could only sit for one hour during an entire eight-hour workday. AR 471. As the Commissioner rightly points out, Plaintiff herself testified that she can sit for longer than this; specifically, that she can sit for two hours in an eight-hour workday. Doc. 24 at 9. The inconsistency between what Dr. David opined Plaintiff can do and what Plaintiff herself said she can do does provide some reason to question the reliability of Dr. David's opinion on this point. Without other supporting evidence, however, an inconsistency over whether Plaintiff can sit for one or two hours does not justify a determination that Plaintiff can sit for up to six hours in an eight-hour workday, as the ALJ found Plaintiff could.

Similarly, while the x-rays of Plaintiff's spine are not irrelevant, they do not justify finding that Plaintiff can sit for six hours in an eight-hour workday. The first reason for this is that it appears the ALJ misapprehended the result of these x-rays. The doctor who interpreted the x-ray results, Dr. David D'Andrea, M.D., opined that these records showed "moderately severe degenerative disc disease . . . ." AR 475. When the ALJ referred to these results, however, he left out the word "severe", and characterized the x-rays as showing only "moderate degenerative changes". AR 27.[1] Thus, it appears that the ALJ misinterpreted the primary evidence he used to discount Dr. David's opinion.

Second, it does not appear that any doctor who examined Plaintiff or reviewed her records found that Plaintiff could sit for such a long period of time. In fact, consultative examining physician Dr. Raul Young Rodriguez, M.D., to whom the ALJ otherwise gave

---

[1] It appears that Dr. David later summarized the results of the x-rays as showing "mod deg changes" (AR 476), which may explain why the ALJ reported that the x-rays showed "moderate degenerative changes." AR 27. Because it appears that Dr. David was summarizing the findings of Dr. D'Andrea rather than independently reaching his own conclusions regarding the results of these x-rays, to the extent Dr. David's report conflicts with Dr. D'Andrea's report, the report of Dr. D'Andrea should control. If the ALJ were to place Dr. David's report over the report of Dr. D'Andrea, however, he would be required to explain why he did so, particularly in light of the fact that he gave "little weight" to the opinions of Dr. David. Further, given that the ALJ was using the results of these x-rays to discount the opinion of Dr. David, it would be anomalous to elevate the opinion of Dr. David over that of Dr. D'Andrea as a means to discount the opinion of Dr. David.

substantial weight, opined that Plaintiff could only sit for four hours per day. AR 28. Given that no doctor opined that Plaintiff could sit for more than four hours per day, how did the ALJ get to six hours per day? The ALJ is not a doctor and so it would be improper for the ALJ to reach this conclusion based on his independent assessment of the x-rays. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."). And, no other evidence appears to support the ALJ's conclusion. As a result, the ALJ's conclusion regarding Plaintiff's ability to sit for six hours out of an eight-hour work day is not supported by substantial evidence.

The Court makes the same finding with regard to the ALJ's consideration of Plaintiff's ability to use her hands for repetitive actions such as simple grasping and fine manipulation. Dr. David, her treating physician, said she could not do these things. AR 472. The ALJ, on the other hand, determined that Plaintiff "can frequently handle and finger bilaterally . . ." AR 26. Plaintiff's ability to use her hands for repetitive actions such as simple grasping and fine manipulations is important given the jobs the ALJ found Plaintiff had the ability to perform: eyeglass polisher, brake line coater, and printed circuits taper. AR 31. Yet, the ALJ gave no specific reason for discounting Dr. David's opinion about Plaintiff's ability to use her hands. The evidence he cites to – the x-ray of Plaintiff's back, notes that show she can walk on her heels and toes, and her testimony that she can sit for two hours – have nothing to do with her ability to frequently handle and finger bilaterally. Nor, other than simply summarizing Plaintiff's medical history, did the ALJ address Plaintiff's diagnosis of carpel tunnel syndrome on both hands, her osteoarthritis of her left thumb and fingers, her past "several" surgeries on her hands and wrists,

9

or her complaints that "she frequently dropped objects due to pain in her hands." AR 27, AR 479, AR 269. While the Court did also observe some evidence in the record that might lend support to the ALJ's conclusion regarding Plaintiff's ability to use her hands, the ALJ did not cite this evidence as a reason to give Dr. David's opinion little weight. Because the Court cannot justify the ALJ's decision through post hoc rationalization, this unaddressed evidence is irrelevant, however. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (stating that a reviewing court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

## IV. CONCLUSION

Based on the foregoing, the Court **grants** Plaintiff's Motion (Doc. 23) and remands this action for further proceedings consistent with this opinion.

_____
UNITED STATES MAGISTRATE JUDGE
**Sitting by Consent**